# Agee *v.* Mayer Brothers.

## *Trover.*

1. *Attachment by landlord against tenant; when may be levied on crop of under-tenant.*—An attachment sued out by a landlord for the recovery of rent, the mandate of which runs merely against the crops of the tenant in chief, authorizes a levy of the writ, not only on the crops of the tenant in chief, but also on the crops raised on the rented premises by an under-tenant.

2. *Same; competent evidence for sheriff, when sued in trover for conversion of crops levied on.*—The attachment in such case is competent evidence for the sheriff in an action of trover brought against him to recover damages for a conversion of cotton raised on the rented lands by the under-tenant, and seized by the sheriff under the attachment, by a purchaser, with notice of the landlord's lien, who was in possession of the cotton at the time of the levy.

APPEAL from Marengo Circuit Court.

Tried before LUTHER R. SMITH, Esquire, acting as Special Judge.

This was an action brought by the appellees against the appellant, to recover damages for the alleged conversion of three bales of cotton. In addition to the facts stated in the opinion, it may be added, that it was shown on the trial that Green, the subtenant, had fully paid his rent to Howze & Creagh, the tenants in chief; that the appellant offered to prove, in connection with the offer to introduce in evidence the attachment, that he levied the attachment on the crops of the sub-tenant, "because he had not been able to find sufficient property of the tenants in chief, Howze & Creagh, to satisfy the amount for which he was required by said writ to levy;" and that the mandate of the writ required the sheriff to attach so much of the crops of said Howze & Creagh grown on the rented premises, as would be of value to satisfy the debt claimed in the attachment proceedings, and costs.

E. P. MORRISETTE, WATTS & SONS and JONES & JOHNSTON, for appellant.—(1) The plaintiffs in the attachment, as landlords, had a lien on the entire crop grown on the rented premises; and for the purposes of the attachment, all cotton grown thereon during the year, whether grown by the tenants in chief, or by their sub-tenants, was liable to the attachment.—*Givens v. Easley*, 17 Ala. 385. (2) Even if the writ had issued against the estate of Howze & Creagh, it would have only been irreg-

[Agee v. Mayer Brothers.]

ular, and might have been properly levied on the crop grown on the rented premises. Such a writ is not *void*, although it might have been abated on plea.—*Ellis v. Martin*, 60 Ala. 394; *De Bardeleben v. Crosby*, 53 Ala. 363. (3) The attachment, however, was not against the estate generally of Howze & Creagh, but was against their crops grown on the rented premises. All the crops grown on the rented premises are to be treated as the property of the tenant, so far as the rights of the landlord are concerned. The landlord's attachment could not be against the sub-tenant, for the relation of landlord and tenant does not exist between them. It could only be against his tenant, and then it can be levied on any crops on which the landlord has a lien for the payment of his rent.

MACARTNEY & CLARKE and W. H. TAYLOE, *contra.*—(1) It is not controverted that the landlord has a lien upon the crop of the under-tenant, nor that, to satisfy his demand for rent, he may levy on such crop to discharge the balance due, after exhausting the crop of the tenant in chief. But it is his duty to first exhaust such last mentioned crop.—Code of 1876, § 3476. Now, he may be satisfied that the crop of the tenant in chief will satisfy his demend, and may, in that case, sue out a writ only against such crop. That was done in this case. The mandate of the writ was directed against the *crop of Howze & Creagh alone*. If he chose to so limit his right, the sheriff had no right to go outside the mandate issued to him. (2) A writ to be levied on the crops of the sub-tenants must run against the crops grown on the rented premises generally, and not be confined to the crops of the tenant in chief. The suit must, of course, be against the tenant in chief, but that need not narrow the language of the mandate of the writ. It is said by appellant's counsel, that all the crops are those of the tenant in chief. But section 3476 of the Code requires the landlord to take notice of the crops of the under-tenant, and makes a very considerable difference in the manner of the enforcement of the rent-lien; and under it, the cases cited for appellant are not applicable. (3) The cases of writs running against the general estates of defendants are not in point. They were irregular because the mandate was too broad, but justified the officer in levying on any property within its expressed terms. In this case the mandate was limited, and the sheriff went outside of it. The writ was his commission, and to justify under it, he must not have exceeded its authority.

SOMERVILLE, J.—This is an action of trover brought against a sheriff for the alleged conversion of three bales of cotton. The defendant seeks to justify under a writ of attach-

ment, issued at the instance of a landlord against the crops of his tenants in chief grown on the rented premises. The writ runs against the *crops of Howze & Creagh*, who were the *tenants in chief*, and the cotton in controversy was raised by one Green, an *under-tenant*, and by him sold to the appellees who purchased with notice of the landlord's lien.

It is insisted that the mandate of the writ only authorized a levy upon the particular crops raised by Howze & Creagh, and not on crops raised by under-tenants. This view was sustained by the court below, and the writ of attachment was excluded as evidence on objection of the plaintiffs.

We are of opinion that this was error. The lien, secured to landlords by statute for the payment of rent, is one *created by law* as an incident of the tenancy, and is not dependent on the issue and levy of the attachment.—Code, 1876, § 3467; *Ellis v. Martin*, 60 Ala. 394. "The whole purpose of the statute is to create a lien in favor of landlords on crops grown on rented lands, and to provide an efficient remedy for the enforcement." *De Bardeleben v. Crosby*, 53 Ala. 363. The ordinary phraseology of the writ has usually been in the form of a mandate to attach so much of the crops grown on the rented premises as may be sufficient to satisfy the debt and costs.—*Hawkins v. Gill*, 6 Ala. 620. In view of these principles, the construction insisted on by appellees' counsel seems to us too narrow and technical, especially in the light of the statutory provision which prohibits from prevailing any objection for want of form in the writ, "if the *essential matters* are set forth."—Code, § 3264. There is no privity of contract between the landlord and any of the occupants of his rented land except the tenant in chief, and in a certain sense, as to the landlord, all the crops, which are charged by law with the payment of rent, may be regarded as the crops of the tenant in chief, until this lien is discharged, waived or otherwise lost. "The attachment law must be liberally construed to advance the manifest intent of the law." Code, § 3315; *Ellis v. Martin*, 60 Ala. 394; *Blair v. Miller*, 42 Ala. 308; *Ware v. Todd*, 1 Ala. 199.

Sections 3476–7 of the Code are intended merely to require the crops of the tenant in chief to be exhausted before proceeding to go against the crops of the under-tenant. They can not be construed as intended to embarrass attachment proceedings, by encouraging objections for want of form in the writ, which are not of an essential nature.

The court erred in excluding the writ of attachment from evidence, and the judgment must be reversed and the cause remanded.